# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAMES M. DAY,

      Petitioner,

v.                                               No. 1:15-cv-01044-JCH-KRS

NATURAL RESOURCES CONSERVATION
SERVICE, *an agency within* THE UNITED
STATES DEPARTMENT OF AGRICULTURE,

      Respondent.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Petitioner-Appellant James M. Day's Appellate Brief in Chief filed on June 30, 2016 pursuant to the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. *See* ECF No. 16 ("Pet'r's Op. Br.") The dispute between Day and the Natural Resources Conservation Service ("NRCS" or "Agency") centers on whether NRCS properly terminated Day's Conservation Stewardship Program ("CSP") contract and required Day to repay $160,000 in program benefits that he received under the contract. *See* Joint Status Report, ECF No. 11. Having reviewed the Administrative Record and considered the parties' arguments in the petition and briefs, the Court finds that NRCS acted in accordance with the law in determining that Day was required to refund all CSP payments made to him, and therefore affirms the Agency's decision. The Court additionally affirms the National Appeals Division Director's Determination that Day is not entitled to equitable relief.

# I.    FACTUAL BACKGROUND[1]

The Court summarizes the factual and procedural history of this case, describes the relevant standard of review under the APA, and then performs its analysis.

Day is a rancher in New Mexico and a franchisee owner of rent-to-own stores. *See* Administrative Record at AR-000119. He had a general sense of his business affairs such as income and losses, but not a detailed accounting-level knowledge of such information. *Id.* at AR-000059. Day therefore relied on an accountant to manage his taxes and financial affairs and to calculate his Adjusted Gross Income ("AGI") and to prepare and amend his tax returns. *Id.*; *id.* at AR-000119. With his accountant's help, Day routinely amended his tax returns to carry back losses from one tax year to a prior tax year. *Id.* at AR-000059.

In 2006 and 2007, Day's franchise business was not performing well, so he sold several of his stores back to the franchisor.[2] *Id.* This sale to the franchisor resulted in a large capital gain for Day in 2007. *Id.*

In September 2009, NRCS contacted Day and encouraged Day to enroll in the CSP program. *Id.* "The purpose of CSP is to encourage producers to address priority resource concerns and improve and conserve the quality and condition of natural resources in a comprehensive manner by … [u]ndertaking additional conservation activities; and [] [i]mproving, maintaining,

---

[1] In presenting the relevant factual background, the Court "accept[s] the agency's factual findings if those findings are supported by substantial evidence on the record as a whole." *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992) (emphasis removed). The following facts found by the Administrative Judge are undisputed unless otherwise noted.

[2] In his Brief in Chief Day says he sold "one" of his stores back to the franchisor whereas the Administrative Judge found that Day sold "several" stores back to the franchisor. *See* AR-000059. The Court acknowledges this distinction but notes that it has no legal impact on the Court's analysis.

and managing existing conservation activities." 7 C.F.R. § 1470.1[3]; *See* AR-000119 (citing 7 C.F.R. § 1470.1(b) and (d) (2010)). "NRCS provides financial and technical assistance to eligible producers to conserve and enhance soil, water, air, and related natural resources on their land." Conservation Stewardship Program, 81 FR 12573-01, 2016 WL 892497. CSP encourages land stewards like Day "to improve their conservation performance by installing and adopting additional activities and improving, maintaining, and managing existing activities on eligible land." *Id*.

An applicant applying for CSP funds was required to have an average adjusted gross nonfarm income under $1 million for the three tax years preceding the most current tax year, otherwise the applicant would be ineligible to receive CSP funds. *See* 7 C.F.R. § 1400.500(d). In October 2009, Day completed an AGI Statement for the 2010 program year for which he was applying. *See* AR-000060. Day was required to complete the AGI Statement to verify that he was eligible to participate in the CSP program. *Id.* at AR-000120. On the AGI Statement, Day indicated that his nonfarm AGI was $1 million or less for tax years 2006, 2007, 2008. *Id*.

Day completed the AGI Statement while participating in an interview with an NRCS representative. *Id*. He told the representative that he might have a problem with the AGI limitation for 2007 based on the sale of his franchise stores. *Id*. Without describing the sale, Day told the NRCS representative that in 2007 he had a large, one-time asset sale with a resulting capital gain. *Id*. at AR-000060. Day asked the representative whether capital gains are included in the calculation of AGI, but the representative said that she did not know. *Id*. Day said that he would have to check with his accountant to answer that question. *Id*.

---

[3] Throughout this Memorandum Opinion and Order the Court cites to the 2010 edition to the applicable parts of the Code of Federal Regulations that were in effect when Day was enrolled in the CSP program.

Based on information from his accountant, Day believed that his losses after 2007 would be carried back through amended tax returns, thereby reducing his AGI for 2007. *Id*. Day believed that the anticipated reduction of his tax liability for 2007 would allow him to comply with the nonfarm AGI limit for the CSP. *Id*. So Day informed the representative that his current business losses would offset the capital gain from 2007 and that he thought he would be "okay" under the AGI requirements. *Id*. The representative encouraged him to complete the AGI paperwork if he thought he would be okay, and Day signed the document without discussing it with his accountant. *Id*. By signing the AGI certification, Day acknowledged he had read the definitions on the second page of the form, which included the definitions for "nonfarm income"; certified that the information in the certification was true and correct; and certified that the income certifications were consistent with tax returns filed in with the IRS. *Id*. at AR-000181.

A different agency, the Farm Services Agency ("FSA") initially determines a participant's compliance with the CSP AGI limitations through a self-certification such as the one Day completed. *Id*. at AR-000060. FSA does not initially review the information on an AGI certification provided by a participant, but FSA may audit a participant's compliance with the AGI limits. *Id*. This audit may occur well after the parties execute the CSP contract. *Id*. NRCS relies on FSA to determine a participant's compliance with the AGI limit. *Id*.

In early 2010 Day and NRCS entered into the CSP contract covering over 9,000 acres of Day's land. *Id*. The CSP contract included the average nonfarm AGI limitation, stating that a participant whose average adjusted gross nonfarm income exceeded $1 million would not receive any benefit from the contract. *Id*. at AR-000148. The CSP contract required Day to construct and install game ladders for water storage tanks and drinkers, annually map the salt and mineral blocks around the drinkers, develop a rotation plan for the mineral blocks, and to annually change and

recycle the used oil from his tractor. *Id*. at AR-000119. In exchange for these activities NRCS would pay Day $40,000 per year from 2010 through 2014, for a total of $200,000. *Id*. at AR-00061. Day incurred no out-of-pocket expenses for constructing and installing the game ladders or mapping the salt and mineral blocks, although he did incur unspecified out-of-pocket expenses for driving to Clovis, New Mexico to have the used tractor oil recycled. *Id*. It is undisputed that before NRCS terminated the contract, Day fully complied with his end of the contract, and thus NRCS paid him $40,000 annually from 2010 through 2013, for a total of $160,000. *Id*. at AR-000119 – 000120.

In 2012, FSA asked Day to provide additional income information for the 2010 tax year. *Id*. at AR-000120. FSA made this inquiry because in April 2012, Day's accountant sent a letter to FSA indicating that Day could be over the applicable AGI limited based on his tax returns. *Id*. at AR-000061. More specifically, the accountant's letter indicated that Day's average nonfarm AGI for the 2010 program year was $2,799,283 based on a nonfarm AGI of $1,742,115 in 2006, $8,661,764 in 2007 and a loss of $2,006,031 in 2008. *Id*. at AR-000062. Day received no response from FSA or NRCS about his accountant's April 2012 letter. *Id*.

In 2012 and 2013 Day and an NRCS continued to certify that Day completed the required conservation practices for those years and that the practices met the CSP's requirements. *Id*. NRCS paid Day $40,000 each of those years. *Id*.

In 2014, FSA audited Day's compliance with the AGI limitations for program year 2010. *Id*. at AR-000120. The FSA reviewed Day's tax returns and other information Day provided and determined that Day's nonfarm income exceeded the $1 million nonfarm AGI limitation for conversation programs. *Id*. at AR-000120 – 000121. In a March 2014 letter to Day, FSA told Day that he was ineligible for 2010 program payments and that he was required to refund any CSP

payments he had received for the 2010 program year. *Id*. at AR-000121. FSA notified NRCS that Day's income exceeded the AGI limit. *Id*.

In response, NRCS terminated the CSP contract between it and Day. *Id*. The NRCS' May 2014 letter to Day referenced FSA's finding that Day did not meet income eligibility requirements at the time of the contract obligation. *Id*. at AR-000005; AR-000062. The letter informed Day that he was obligated to repay to NRCS $160,000 in previous payments he received under the CSP contract and $16,000 in liquidated damages. *Id*. at AR-000005. The Agency terminated the CSP contract pursuant to 7 C.F.R. § 1470.6(a)(4), which says a program participant must be compliant with the AGI provisions. *Id.* at AR-000275. The Agency said that under 7 C.F.R. § 1470.36(b) and (c)(4) it had no latitude to reduce the refund demand of $160,000. *Id*. The letter also advised Day that he might be eligible for equitable relief under the NRCS' relief authority at 7 C.F.R. § 635. Day's lawyer responded to the Agency's decision by letter on June 17, 2014. *Id*. at AR-000212.

In September 2014 the NRCS and Day engaged in mediation. *Id*. at AR-000121. NRCS agreed to waive the $16,000 in liquidated damages. *Id*. Otherwise NRCS' position concerning refund of the $160,000 from Day remained unchanged. *Id*.

## II.     PROCEDURAL BACKGROUND

In November 2014, Day's lawyer mailed to NRCS a letter containing an analysis of the case and a proposed solution. *Id*. at AR-000063. The letter stated that Day's accountant confirmed that because of the 2007 sale of Day's store, Day's average adjusted nonfarm income exceeded the AGI limit for 2010. *Id*. at AR-000014. The letter asserted that Day "acted in good faith" at the time he completed the application. *Id*. Reasoning that 7 C.F.R. § 1470.27[4] gave NRCS discretion

---

[4] Day argued that 7 C.F.R. § 1470.27 gave the Agency discretion to demand a partial refund, as evidenced by various portions of the regulation, including its language that "NRCS may require a participant to provide only a partial refund …" if certain conditions were met. *See* Pet.'r's Op.

to reduce its refund amount, the letter proposed that NRCS reduce its refund demand to $40,000

*Id*. at AR-000014 – 000015.

On November 6, 2014, NRCS rejected Day's interpretations of this and other regulations, upheld the termination of his CSP contract, and demanded refund of $160,000 it paid to Day under the contract. *Id*. at AR-000016. The Agency explained that it lacked authority to waive its demand for full repayment of the contract payments because those payments were improperly given to Day in the first place. *Id*.

On November 10, 2014, Day appealed the Agency's decision to the National Appeals Division ("NAD") of the United States Department of Agriculture. *Id*. at AR-000010. In February 2015, an Administrative Judge found that Day did not intentionally, fraudulently, or negligently misstate his nonfarm AGI on the 2010 AGI statement. *Id.* at AR-000062. The Administrative Judge characterized Day's misstatements as "erroneous." *Id*. The Administrative Judge made additional findings that Day did not breach the CSP contract other than being ineligible to participate in the CSP because of the AGI limitation issue, and that Day otherwise performed his end of the contract to perform the conservation improvement activities. *Id*. at AR-000064. Nevertheless, the Administrative Judge affirmed the Agency's decision to terminate Day's CSP contract, reasoning that Day was never eligible to participate in the CSP program in the first place because his nonfarm AGI exceeded $1 million for the 2010 program year. *Id*. at AR-000064 – AR-000065. Specifically, the Administrative Judge explained that AGI eligibility is determined once based on the year in which the Agency approved the CSP contract, which was 2010. *Id*. The AGI determination then applies for the entire term of the contract. *Id*. at AR-00065 (citing 7 C.F.R. § 1400.500(e)(2008)).

---

Br. at 11. The Agency's interpretation of this regulation plays a central role in the dispute between Day and NRCS and will be discussed in much more detail in the sections that follow.

The Administrative Judge made the following three additional conclusions of law. First, Day was required to refund all CSP payments made to him because Day erroneously represented that he satisfied the CSP's nonfarm AGI limit, and that under the governing regulations a participant who erroneously represents any facts affecting a CSP determination is not entitled to contract payments and must refund all payments received. *Id*. at AR-000066. Second, the Agency properly denied Day's request of the Agency to waive or reduce the full refund demand of $160,000. *Id*. at AR-000067. The Administrative Judge reasoned that Day's erroneous representation of fact concerning his AGI eligibility for 2010 program necessitated refund of all payments under the relevant regulations, and that the applicable regulations, the Agency's Conservation Program Manual, and the CSP contract itself permitted no exceptions to this requirement. *Id*. Third, the Administrative Judge rejected Day's assertion that the Agency failed to consider his request for equitable relief. *Id*. at AR-000068. Although Day did submit a responsive letter to the Agency's termination letter within the appropriate 30-day period to appeal, the Administrative Judge concluded that the letter only asked for the Agency to reconsider its position and requested a full waiver of liquidated damages; the letter did not request equitable relief. *Id.* The Administrative Judge additionally developed a factual record to enable a reviewing tribunal to decide whether to grant or deny equitable relief.[5]

On March 11, 2015 Day appealed the Administrative Judge's decision to the Director of the National Appeals Division. *Id*. at AR-000077. Day also made a direct request to the Director for equitable relief. *Id*. On November 4, 2015, the Director affirmed the Administrative Judge's

---

[5] The Administrative Judge does not decide a request for equitable relief but instead develops a record for the reviewing authority to determine whether equitable relief should be granted. *See* 7 C.F.R. § 11.8(c)(5)(ii).

decision on the merits in all respects and denied Day's direct request for equitable relief. *Id*. at AR-000118 – 000128.

After having gone through two layers of administrative review, on November 16, 2015, Day sought judicial review of the Director's determination in this Court under the APA and 7 U.S.C. § 6999 ("[a] final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction ….") Day initially filed a complaint requesting review of an erroneous decision by the Agency. *See* Pet'r's Compl., ECF No. 1. The complaint alleged a violation of due process and alternatively requested the Court to set aside the Agency's actions and deem its conclusions as arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law and unsupported by substantive evidence. *See id.* ¶¶ 7-8, at 2. In response, the Agency correctly pointed out that challenges to federal agency actions are not subject to the use of normal civil trial procedures because reviews of agency actions in district court must be processed as appeals. *See* Resp't's Resp. to Compl., ECF. No. 6 (citing *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1580 (10th Cir.1994)). Day therefore filed this Brief in Chief as an appeal from the Director Review Determination issued by NAD. *See* Pet'r's Op. Br. at 4.

Because the Agency is correct that reviews of agency action must be treated as appeals, the Court will interpret Day's complaint as a "Petition for Agency Review" and his Brief in Chief as being a memorandum in support of that petition. In his Statement of Issues for review by this Court, Day articulates his points of appeal as follows[6]:

---

[6] Day does not appeal two other holdings by the Director. First, Day does not appeal the Director's holding that the Agency correctly terminated the CSP contract in the first place. The Director rejected Day's argument that NRCS, with FSA acting as its purported agent, modified the CSP contract's program year from 2010 to either 2011 or 2012 by asking Day and his wife to

1. Did the NRCS act in an arbitrary, capricious fashion, or otherwise abuse its discretion when it determined that it did not have the authority to decide whether to reduce its refund demand?

2. Was the Director's decision to deny equitable relief based on a finding for which there was no substantial evidence?

*Id.*

## III. STANDARD OF REVIEW UNDER THE APA

The parties agree that the proper standard of review for determining whether NRCS lawfully refused to reduce its refund amount of $160,000 is set forth in the APA, and that the exceptions set forth in 5 U.S.C. § 701(a)(1)-(2) do not apply. *See McAlpine v. United States*, 112 F.3d 1429, 1432 (10th Cir. 1997) (judicial review of agency action overcome where statue precludes judicial review or where agency action is committed to agency discretion by law).

The APA is not a jurisdiction-conferring statute; it does not directly grant subject matter jurisdiction to the federal courts. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977); *Air Courier Conf. v. Am. Postal Workers Union*, 498 U.S. 517, 523 n. 3 (1991). Rather, the judicial review provisions of the APA provide a limited cause of action for parties adversely affected by agency action. *See Bennett v. Spear*, 520 U.S. 154, 175 (1997); *Japan Whaling Ass'n v. Am. Cetacean*

---

submit new AGI statements, a wetland conservation certification, and farm operating plan that identified 2011 or 2012 as the applicable program year. For purposes of AGI determination, using the 2011 or 2012 program year would implicate the tax years after 2007, the year Day received a large capital gain. The Director and the Administrative Judge rejected Day's arguments and found insufficient evidence to establish a contract modification. *See generally* AR-000064 – AR-000066; AR-000122 – AR-000124. The Director also rejected another aspect of Day's principal-agent argument that NRCS, through FSA, knew that Day was noncompliant with the AGI limitation for program year 2010 before FSA audited his compliance in 2014. Day did not appeal these specific holdings to this Court.

Second, Day does not appeal the Director's holding that Day failed to properly and timely submit a request for equitable relief to the Agency.

*Soc'y*, 478 U.S. 221, 230 n.4 (1986). Although the APA does not directly grant jurisdiction, the federal question statute, 28 U.S.C. § 1331, "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate." *Califano*, 430 U.S. at 105.

Under the APA, a reviewing court is authorized to "decide all relevant questions of law" and may either "compel agency action unlawfully withheld or unreasonably delayed" or "hold unlawful and set aside agency action, findings and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] in excess of statutory jurisdiction ... [or] without observance of procedure required by law...." 5 U.S.C. § 706. Agency action is defined as including "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or a failure to act." 5 U.S.C. § 551(13). Agency action is arbitrary and capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Alabama-Quassarte Tribal Town v. United States*, 899 F.3d 1121, 1125 (10th Cir. 2018).

A reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971), *abrogated in part on other grounds as recognized in Califano v. Sanders,* 430 U.S. at 105. Although a court's inquiry must be thorough, the agency's decision is "entitled to a presumption of regularity," and the reviewing court may not substitute its judgment for that of the agency. *Id.* at 415–16. "Sometimes, as here, a plaintiff will also challenge the agency's interpretation of the applicable regulations." *Biodiversity*

*Conservation All. v. Jiron*, 762 F.3d 1036, 1060 (10th Cir. 2014). When that occurs, the reviewing court "must determine which interpretation to judge the agency's action against." *Id*. The reviewing court gives "'substantial deference' to the agency's interpretation of its own regulations." *Id*. (citing *Utah Envtl. Cong. v. Troyer,* 479 F.3d 1269, 1281 (10th Cir.2007) ("We may reject the agency's interpretation only when it is unreasonable, plainly erroneous, or inconsistent with the regulation's plain meaning.")) "A presumption of validity attaches to the agency action and the burden of proof rests with the [party] who challenges such action." *Citizens' Comm. to Save Our Canyons v. Krueger,* 513 F.3d 1169, 1176 (10th Cir. 2008).

When reviewing factual determinations made by an agency, the court "will set aside the [agency's] factual determinations only if they are unsupported by substantial evidence." *Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 704 (10th Cir. 2010); *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1072 (9th Cir. 2015) ("[t]o the extent the petition challenges the agency's factfinding, we may review the State Department's determinations for substantial evidence.") "Evidence is substantial in the APA sense if it is enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion to be drawn is one of fact." *Forest Guardians*, 611 F.3d at 704. "The substantial-evidence standard does not allow a court to displace the [Agencies'] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Wyo. Farm Bureau Fed'n v. Babbitt*, 199 F.3d 1224, 1231 (10th Cir. 2000).

Judicial review is based upon "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Thus, review of an agency's action under the APA "is to be based on the full administrative record that was before [the agency] at the time [it] made [its] decision." *Overton Park*, 401 U.S. at 420. "The complete administrative record consists of all documents and materials

directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). The United States Supreme Court has explained that "the focal point for judicial review [under the APA] should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam); *accord Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985). Even though judicial review rests with a district court, the district court does not act as a fact-finder. *Fla. Power & Light*, 470 U.S. at 744. Instead, "[t]he task of the reviewing court is to apply the appropriate APA standard of review . . . based on the record the agency presents . . . ." *Id*. at 743-44.

## IV.   ANALYSIS

The Court recognizes that there is a presumption of validity that attaches to the NRCS' actions as an agency, and that Day carries the burden of proof to show the NRCS' actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law …." 5 U.S.C. § 706. For the Agency's determinations to survive review under the arbitrary-and-capricious standard NRCS must have "examined the relevant data and articulated a rational connection between the facts found and the decisions made." *Cure Land, LLC v. United States Dep't of Agric.*, 833 F.3d 1223, 1230 (10th Cir. 2016).

### A.

Day first argues that NRCS has statutory authority to reduce its refund demand under the CSP program's governing statute, 16 U.S.C. §§ 3838d – 3838g (2014) and that the Agency's regulation conflicts with this statute.[7] Day additionally contends that the statute contains no

---

[7] In its response brief, NRCS argues that Day waived his argument that the statute governing the CSP allowed the Agency to reduce its refund demand because Day never mentioned those statutes until now. *See* Resp't's Br., ECF No. 17, 6. NRCS therefore urges the Court not to consider Day's statutory arguments. The Court disagrees with NRCS. While the Agency is correct that Day cited to CSP's governing statute for the first time in this federal case, Day's

nonfarm AGI limitation, which derives from the Agency's regulation. The statute at issue, 16

U.S.C. § 3838f, provides that

> If a contract is terminated, the Secretary may, consistent with the purposes of the program--
> (A) allow the producer to retain payments already received under the contract; or
> (B) require repayment, in whole or in part, of payments received and assess liquidated damages.

16 U.S.C.A. § 3838f(d)(5)(A) – (B).

The Court reviews an agency's interpretation of a statute under the standards set forth in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837 (1984). If a court determines at the first stage of the inquiry that "Congress has directly spoken to the precise question at issue," the court "must give effect to the unambiguously expressed intent of Congress." *Id.* 467 U.S. at 842-43. But if "the statute is silent or ambiguous with respect to the specific issue," the reviewing court will uphold the agency's interpretation if it "is based on a permissible construction of the statute." *Id.* at 843.

At step one of the *Chevron* analysis, the question is whether the statute requires the Agency to demand a full refund. The answer is that the Agency "may" demand a partial refund; the Agency therefore has discretion to reduce its refund demand. Day argues that the disposition of this case is therefore governed by the first step in the *Chevron* analysis – *i.e.* "Congress has directly spoken to the precise question at issue" – namely the Agency had discretion to reduce its refund demand and erred by not doing so. *Id.* at 842.

---

essential argument is that the Agency exceeded its basic statutory authority, which is a threshold issue that a reviewing court is certainly authorized to hear. In fact, the APA codifies this judicial review by instructing a reviewing court to "hold unlawful and set aside agency action" that it determines to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." § 706(2)(C). Day's statutory-based arguments are properly before the Court for review.

The Court agrees with Day that the statute plainly permits the Agency to exercise discretion. But there is a secondary question of how that discretion is to be exercised. The statute does not answer that question. Both Day and the Agency agree that NRCS is permitted to enact regulations to carry out the CSP program. *See* 16 U.S.C. § 3838g(i). And "when Congress grants an agency the authority to administer a statute by issuing regulations with the force of law, it presumes the agency will use that authority to resolve ambiguities in the statutory scheme." *Encino Motorcars, LLC v. Navarro*, – U.S. – , 136 S. Ct. 2117, 2125 (2016).

The Agency reasons, and the Court agrees, that 16 U.S.C. § 3838f(g)(3)(A) – (B) left a statutory gap for the Agency to fill, namely, how the Agency should exercise its discretion to demand a full rather than partial refund from a participant who receives improper payments. In that situation "all [the Court] must decide is whether the [Agency], … has filled the statutory gap in a way that is reasonable in light of the legislature's revealed design." *Lopez v. Davis*, 531 U.S. 230, 242 (2001). The Agency contends that it reasonably interpreted the statute in demanding a full refund from Day under 7 C.F.R. § 1470.36(b), which was titled "Misrepresentation and scheme or device." That regulation stated during the relevant period that

> [a] participant who is determined to have erroneously represented any fact affecting a program determination made in accordance with this part shall not be entitled to contract payments and must refund to NRCS all payments …

7 C.F.R. § 1470.36(b).

Day stresses that the Agency should have applied a different regulation, § 1470.27, as a basis for its termination decision. The provision Day advocates for is titled "Contract violations and terminations" and it provides that a participant who "submit[s] false information," § 1470.27(d)(1), could nevertheless partially refund CSP payments

> if a previously installed conservation activity has achieved the expected conservation performance improvement, is not adversely affected by the violation

> or absence of other conservation activities that would have been installed under the
> contract, and the associated operation and maintenance requirement of the activity
> had been met.

7 C.F.R. § 1470.27(e)(1).[8]

Day complains that the Agency's action was arbitrary and capricious in part because it failed to meaningfully analyze and apply § 1470.27(e). However, the Administrative Record shows that the Agency did analyze that provision and held that it did not apply to Day's situation. Day erroneously represented that he satisfied the CSP's nonfarm AGI limitation for the 2010 program year. Accordingly, the Director agreed with the Administrative Judge's reasoning that § 1470.36(b) rather than § 1470.27 applied to Day. Section 1470.36(b) required refund of "all payments," without exception. As the Agency explained, § 1470.27(e) "allowed NRCS to reduce a refund demand for an eligible participant who violated the contract." AR-000124. But that provision did not allow the Agency to reduce its refund demand for Day because he was "never eligible for the program in the first instance." *Id*. The Agency's choice to apply § 1470.36(b) instead of § 1470.27(e) was based on the distinction

> between terminations based on violations of a CSP contract and terminations where
> the participant erroneously provided information to the Agency … The language in
> Section 1470.27(e) on which [Day] relies expressly references 'violations' of a CSP

---

[8] Day suggests that two other regulations excused him from having to pay the full refund demand. 7 C.F.R. § 1470.27(e)(2)(i) allows the Agency to reduce its refund demand "by a proportion that reflects the good faith effort of the participant to comply with the contract or the existence of hardship beyond the participant's control … "[I]f a participant claims hardship, that claim must be well documented and cannot have existed when the applicant applied for participation in the program." 7 C.F.R. § 1470.27(e)(2)(i). Additionally, 7 C.F.R. § 1400.5(b)(2) permits the Agency to reduce its refund demand for a participant who submits erroneous information, as Day did. However, it does not appear that Day presented arguments concerning these regulations to the Agency. The Administrative Judge made no record findings concerning a claim of hardship under 7 C.F.R. § 1470.27(e)(2)(i). Nor did the Director consider this provision or 7 C.F.R. § 1400.5(b). Day waived his legal theories predicated on the Agency's authority to reduce its refund demand under 7 C.F.R. §§ 1400.5(b) and 1470.27(e)(2)(i).

contract. There is no allegation that [Day] violated the contract. Rather the Agency terminated the CSP contract because [Day] was not eligible to participate in the CSP for the 2010 program. Section 1470.36(b) on which the Agency relies specifically applies to situations where a participant has erroneously represented any fact affecting a program determination (here, eligibility) … Given that Section 1470.20(e) applies to contract violations and Section 1470.36(b) applies to refund demands based on the provision of erroneous information, it was reasonable for the Agency to apply Section 1470.36(b) to [Day's] situation.

AR-000068.

Under the "arbitrary or capricious" standard the Court asks whether the Agency's interpretation of the two regulations at issue was based on an examination of the relevant evidence and if the Agency "articulated a rational connection between the facts found and the decision made." *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1168 (10th Cir. 2003). The Court holds that the Agency's interpretation of the two regulations at issue is reasonable. It did not err in relying on § 1470.36(b) to terminate the CSP contract and demand a full refund from Day. The Agency "considered an important aspect of the problem," *Alabama-Quassarte Tribal Town*, 899 F.3d at 1125, namely, whether the full refund demand was based on a violation of the CSP contract or based on a misrepresentation of eligibility in the first place. The Agency decided the latter. That decision conformed with the evidence presented to the Administrative Judge. He made a factual finding that Day's misstatement concerning his eligibility was not intentional, fraudulent, or negligent, but "erroneous," *see* AR-000062, and that under 7 C.F.R. § 1470.36(b) an erroneous representation of program eligibility allows the Agency to demand a full refund of CSP payments. *Cf. Alabama-Quassarte Tribal Town*, 899 F.3d at 1125 (agency action is arbitrary and capricious if the agency "offered an explanation for its decision that runs counter to the evidence before the agency.") Moreover, the Agency fully considered Day's interpretation of the relevant regulations. It even noted that Day presented a "plausible interpretation of the relationship between Section 1470.27(e) and Section 1470.36(b)," but that Day nevertheless had not shown that the Agency's

own interpretation was unreasonable, which was rightfully Day's burden of proof. AR-000067.

Thus, while Day plausibly argues that his provision of false information under § 1470.27(d)(1)

could have triggered the partial refund of § 1470.27(e), the Agency did not err by determining that

§ 1470.27(e) governs contract violations, and that Day did not violate the contract but instead was

never eligible to participate in the CSP program in the first place. The Court agrees with the

Agency's assessment and holds that the Agency lawfully demanded a full refund of CSP payments

under § 1470.36(b) because Day erroneously represented that he was eligible to participate in the

program.

Day's arguments to the contrary in his Brief in Chief do not show that the Agency acted

unreasonably. First, Day argues that the Administrative Judge erroneously concluded that the CSP

contract itself required Day to refund all payments, pointing out that the CSP contract gave him

the right to seek equitable relief under 7 C.F.R. § 635. He says that the Administrative Judge erred

in omitting discussion of 7 C.F.R. § 635. But the Director correctly held that Day's right to seek

equitable relief was "not relevant to an analysis of NRCS's decision on the merits to require a

refund of all CSP contract payments made to [Day] based on [Day's] failure to comply with the

applicable AGI limitation." AR-000125. The Court agrees because the Agency's refund demand

of all payments and Day's right to seek equitable relief from that demand are separate events and

analyses and do not undermine the Agency's decision to demand all payments from Day in the

first place.

Second, Day casts § 1470.36(b) as being a "punitive regulation intended to discourage

unlawful behavior," saying the regulation punishes participants who intentionally or negligently

misrepresent facts or engage in a false scheme. The Court finds no support in the language of §

1470.36(b) for Day's argument that § 1470.36(b) is "punitive" and applies if a participant evinces

culpable conduct, which is a concept traditionally associated with tort law. Rather, under § 1470.36(b), a participant's "erroneous" representation of program eligibility requires him to refund "all payments" to NRCS. Day erroneously represented his nonfarm AGI income. Accordingly, the Agency reasonably concluded that such conduct required him to refund all CSP payments without a requisite finding of culpability.

In sum, Day has failed to carry his burden of proof to show that the Agency acted arbitrarily and capriciously in interpreting and relying on § 1470.36(b) to terminate the CSP contract and demand a full refund from Day. The Court affirms the Agency's demand refund from Day of $160,000.

**B.**

The Court next considers Day's second point of appeal, whether the Director's denial of Day's direct request for equitable relief in the form of retaining $160,000 in contract payments was supported by substantial evidence. The Director may grant equitable relief "in the same manner and to the same extent as such authority is provided to the Secretary under section 7996." 7 U.S.C. § 6998. That statutory section empowers the Director to provide equitable relief to a program participant "not in compliance" with a covered program. The CSP is a covered program for equitable relief consideration. *See* 7 U.S.C. § 7996(a)(2)(A)(ii). Equitable relief may be appropriate for a participant not in compliance with the CSP program if the participant

> (1) acting in good faith, relied on the action or advice of the Secretary (including any authorized representative of the Secretary) to the detriment of the participant; or
> (2) failed to comply fully with the requirements of the covered program, but made a good faith effort to comply with the requirements.

7 U.S.C. § 7996(b)(1)-(2). In awarding equitable relief, the Director was authorized to allow a participant to retain loans, payments or other benefits; continue to receive loans payments, or other

benefits; continue to participate under a contract; re-enroll all of part of land in a conservation program; and receive any other appropriate relief as the Director saw fit. *See id.* at § 7996(c).

Before the Administrative Judge, Day presented arguments for equitable relief under the theories of "detrimental reliance" under § 7996(b)(1) and "good faith effort to comply" under § 7996(b)(2). *See* AR-000069.

Because a finding of good faith on Day's part was a prerequisite to granting relief under either § 7996(b)(1) or (b)(2) the Director examined Day's efforts made in good faith to address, resolve, or remediate his ineligibility for the CSP program. *See* AR-000126 – AR-000128. In conducting this analysis, the Director noted that the following equities weighed in Day's favor: Day used an accountant to manage his taxes and financial affairs and did not possess a detailed account-level knowledge of such matters; Day's accountant routinely amended Day's taxes to carry-back losses to prior tax years, thereby decreasing his AGI for those years; Day fully complied with the CSP contract and met all conservation standards. *Id.* at AR-000127.

However, the Director noted that other considerations did not weigh in favor of granting Day equitable relief. *Id.* Day did not "unwittingly" certify his compliance or rely on the faulty advice of a government representative. *Id.* The Director was "deeply troubled" that Day entered into the CSP contract "despite having serious reservations from the outset about his AGI eligibility." *Id.* Those serious reservations were evinced by Day's full awareness of the AGI limit and Day's suspicion that he may not be compliant with it given that Day voiced the need to consult with his accountant to confirm his eligibility. *Id.* In addition, because Day's actual nonfarm AGI for the 2010 program year was $2,799,283, the Director therefore reasoned it was unlikely that

> either [Day] or his accountant reasonably could believe that their practice of amending prior year tax returns would result in an AGI within the eligibility limitation for the relevant years when [Day's] actual AGI for that time period was almost three times the limit of eligibility.

…

> [I]t [is] unlikely that in 2009 [Day's] accountant would 'assure' him that [Day's] income would be within the AGI limits for 2007 when the accountant himself did not know what [Day's] income was for 2007 until 2014. In any even it is clear from the totality of [Day's] testimony that he believed his AGI for 2007 might be too high, yet he enrolled in the CSP program anyway … Given the significant discrepancy between the AGI limit and [Day's] actual income, it was, to put it charitably, imprudent for [Day] not to confirm his AGI eligibility before agreeing to enter into the CSP contract.

AR-000127 – AR-000128. Day complains on appeal that the Director's conclusions that Day "willingly accepted the risk that he might later be found to be ineligible for the CSP program" and that Day should not have signed the AGI certification form if Day was doubtful about whether he could comply with the AGI limitation were unsupported by substantial evidence. Day additionally argues that the Agency offered no evidence to rebut Day's testimony at the administrative hearing that he did not know he was out of compliance with the AGI limitation until 2012.

The Court reviews these factual conclusions according to the substantial evidence test, *i.e.*, the factual conclusions must be reasonable. The Court's role is to test the Agency's conclusions for reasonableness, not weight of the evidence. The Director's conclusion that Day willingly accepted the risk that he might later be found to be ineligible for the CSP program and should not have signed the AGI certification form is supported by substantial evidence. Day told the representative that he had a large, one-time asset sale in 2007 but said that that he thought he would be "okay" under the AGI requirements. He also asked the representative whether capital gains were included in the AGI, but she responded that she did not know. After opining that he would have to consult with his accountant to answer that question, the representative told him if he thought he would be okay, then he should complete the 2010 AGI paperwork, and he did so without consulting his accountant. While Day had a general sense of his business, he admitted that he

lacked accounting-level knowledge of AGI calculation. He anticipated a reduction of his 2007 AGI based on information from his accountant but in the end, he did not confirm his eligibility before entering into the CSP contract. By signing the AGI certification, Day acknowledged he had read the definition for "nonfarm income"; certified that the information in the certification was true and correct; and certified that the income certifications were consistent with tax returns filed in with the IRS. This evidence supports the Director's conclusion that Day had reservations about his AGI eligibility, and despite those reservations Day represented that his nonfarm AGI for the 2010 program year was less than $1 million.

Day's argument that the Director ignored equities weighing in his favor is unavailing. Day contends that the Director ignored the Administrative Judge's findings that FSA does not generally conduct an initial review or investigation of the information provided by a participant on an AGI certification; that Day's accountant timely responded to FSA in 2012 in response to its audit but that FSA took two-years to Day's letter; and that FSA's and NRCS' letters sent in 2014 were not "models of clarity" in part because they contained confusing timeframes for seeking redress and cited incorrect regulations. But many of these considerations, including FSA's delay in making the AGI determination have nothing to do with the fact that in the 2010 AGI statement that Day certified that his nonfarm AGI for the 2010 program year was less than $1 million. The Director acknowledged that it would have been better for FSA to determine AGI compliance much earlier. It is not uncommon, though, for FSA to audit a participant's income after the parties execute the CSP contract. Before the Director and in these proceedings, Day failed to identify a regulation requiring FSA to determine AGI compliance or conduct an audit within a specific timeframe. The Court finds that substantial evidence supported the Director's conclusion to deny Day's direct request for equitable relief.

## V.     CONCLUSION

The Agency reasonably concluded that Day was not eligible to participate in the conservation stewardship program because he erroneously represented his nonfarm income. The Court affirms the NRCS' refund demand of $160,000 in CSP payments made to Day. The Court additionally affirms the National Appeals Division Director's Determination that Day is not entitled to equitable relief.

**IT IS THEREFORE ORDERED that** Petitioner James M. Day's Petition for Agency Review and Brief in Chief in support thereof **[ECF No. 16]** is **DENIED** and that this case is **DISMISSED** in its entirety.

**SO ORDERED**.


_____
UNITED STATES DISTRICT COURT JUDGE